Filed 3/4/21  P. v. Coffman CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ADAM TOMMY COFFMAN,<br><br>    Defendant and Appellant. | C091319<br><br>(Super. Ct. No. 18FE014238) |

Appointed counsel for defendant Adam Tommy Coffman filed an opening brief that sets forth the facts of the case and asks this court to review the record and determine whether there are any arguable issues on appeal.  (*People v. Wende* (1979) 25 Cal.3d 436.)  After examining the record, we find no arguable error that would result in a disposition more favorable to defendant and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In June 2019, defendant was charged with three counts of committing a lewd and lascivious act on a child under 14 years of age (Pen. Code, § 288, subd. (a), count one

1

[hand to breast], count two [hand to breast different time than count one], and count three [hand to genitalia area over clothes]).[1] He pleaded not guilty to the charges. The following evidence was adduced at trial.

In June 2016, the 12-year-old victim[2] lived with her mother, her older sister, and her two younger brothers. Defendant, the victim's uncle, also lived with the family. Defendant had a bedroom downstairs, while the victim and her sister shared a room as well as a bed upstairs. Because the victim would sometimes have trouble sleeping in her room, she would sleep in her mother's bedroom.

The victim's mother worked the night shift as a nurse. Defendant watched the kids while she was at work. One night, the victim fell asleep in her mother's bed. She woke up after feeling something touching her breasts on the outside of her clothes. At first, she thought it was either her dog or perhaps one of her brothers tossing in his sleep. After realizing it was not her dog or her brother, she grabbed her nearby phone flashlight and saw that it was defendant. She asked defendant what he was doing, and he responded, "I'm sleeping." When she asked why he was touching her, defendant did not respond. She left the room and returned to the bedroom she shared with her sister.

The victim's sister asked her why she came back to their room, and she told her sister that defendant was touching her. Half asleep, her sister did not comprehend what she said, so in the morning the victim repeated what defendant had done to her. She asked her sister if she should tell their mother; fearing that their mother would physically harm defendant when she found out, the girls decided it would be better to tell her only if it happened again.

---

[1] Further undesignated statutory references are to the Penal Code.

[2] The victim was 15 years old at the time of trial.

The next night, the victim's mother went to work and defendant watched the victim and her siblings. The victim was sleeping in her mother's bedroom again when defendant tried to touch her vaginal area. According to the victim, defendant tried to slip his hand underneath the waistband of her shorts, but she kept moving so he would stop.

The victim told her sister what happened. Her sister told her to call their mother. According to the victim, she spoke with her mother and told her what defendant had done. Upon arriving home from work, her mother confronted defendant and kicked him out of the house.

The victim's mother testified that the victim initially told her that defendant had gotten into bed with her, but that he did not do anything except put his arm around her; the victim later told her the full extent of what happened at a friend's house around July 4.[3] She also testified that around the time of the incidents she remembered smelling cigarette smoke on her pillow; neither she nor her children smoked, but defendant did smoke.

Several months later, in March 2017, the victim reported the molestation to her school counselor. As a mandated reporter, the counselor contacted law enforcement. Officer Chay McCampbell responded to the victim's school and interviewed her. She told Officer McCampbell that on the first night, she was awakened by defendant touching her breasts; she grabbed her cellphone, illuminated his face with the phone's flashlight, and asked what he was doing. She went back to her own bedroom and told her sister what happened. The following night, she was awakened when defendant was lying next to her and rubbing her clitoral area over her clothes; he was also fondling her breast. She

---

[3]    The mother's friend similarly testified that the victim disclosed the molestation to her on July 4, and she then told her mother what happened. The victim also disclosed the abuse to her best friend at the time.

jumped up and confronted defendant, but he claimed he was not even in the room and had not touched her.  She told her sister, and then decided to tell her mother.

In April 2017, the victim underwent a Special Assault Forensic Evaluation (SAFE) interview with a social worker who specializes in interviewing alleged sexual trauma victims.  A video of the SAFE interview was played for the jury.

The prosecution called Dr. Anna Washington, a child psychologist, as an expert in Child Sexual Abuse Accommodation Syndrome.  She testified that her role was not to state whether the charges against defendant were true or whether the victim suffered from Child Sexual Abuse Accommodation Syndrome, but rather to explain to the jury common myths and misconceptions about child sexual assault victims.  According to Dr. Washington, children often delay in disclosing abuse, and they disclose details incrementally.  Given their varying concepts of time and sequencing of events, children may also have difficulty relating specific details to specific instances of ongoing abuse.

During cross-examination, the victim denied making up the molestation allegations because she thought defendant was lazy, or because she disliked defendant living with her family.  She also testified that defendant tried to touch her vagina the second night, but did not actually do so.  She did not remember telling an investigator that he touched her clitoral area over her underwear with his fingers.

Defendant testified on his own behalf.  He admitted that in 2014 he was convicted of burglarizing a liquor store.  He moved in with his sister in 2015, and was supposed to care for the children and do household chores.  When not doing chores, he would stay in his room and watch movies or play video games.  He admitted he smoked but denied smoking in his sister's bedroom.  He also denied ever crawling into bed with the victim or committing any sexual act on her; he denied ever touching her in any sexual manner.

On cross-examination, defendant said the victim sometimes lied about things like a typical child.  He surmised that she fabricated the molestation allegations against him, perhaps at her mother's behest, because he and her mother had earlier gotten into a fight

4

over him smoking marijuana. Defendant could not explain how the smell of cigarette smoke got on the victim's mother's pillow since he denied sleeping in her bed; he believed she made up the cigarette smell in an attempt to corroborate the victim's allegations.

The jury found defendant guilty on count one, but not guilty on count two. The jury could not reach a verdict on count three, and the court declared a mistrial as to that count. The court subsequently dismissed count three on the prosecutor's motion.

In November 2019, the trial court sentenced defendant to the midterm of six years on count one. It awarded defendant 193 days of actual credit plus 29 days of conduct credit for a total of 222 days of credit. The court imposed a $40 court operations assessment (§ 1465.8), a $30 court facilities assessment (Gov. Code, § 70373), a $453.62 main jail booking fee (Gov. Code, § 29550.2), a $90.65 main jail classification fee (Gov. Code, § 29550.2), an $1,800 restitution fine (§ 1202.4), and an $1,800 parole revocation restitution fine, which was suspended unless parole was revoked (§ 1202.45). Defendant filed a timely notice of appeal.

## DISCUSSION

We appointed counsel to represent defendant on appeal. Counsel filed an opening brief setting forth the facts of the case and requesting that this court review the record to determine whether there are any arguable issues on appeal. (*People v. Wende, supra*, 25 Cal.3d 436.) Defendant was advised of his right to file a supplemental brief within 30 days of the date of filing of the opening brief. More than 30 days elapsed, and we received no communication from defendant.

Having undertaken an examination of the entire record, we find no arguable error that would result in a disposition more favorable to defendant.

5

## DISPOSITION

The judgment is affirmed.


_____/s/_____
RAYE, P. J.


We concur:


_____/s/_____
HULL, J.


_____/s/_____
HOCH, J.

6